IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Andrea R., on behalf of herself, and as parent/guardian/next friend of S. R., a minor student with disabilities, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Case No.  4:19-cv-3524 |
| Conroe Independent School District | § § § | |
| Defendant. | § § | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

Comes now, Andrea R., on behalf of herself and as parent/guardian/next friend of S. R., a minor student eligible for special education, ("Plaintiffs" or "Andrea R." or "S. R.") and brings this Original Complaint and Appeal against Defendant Conroe Independent School District ("Defendant CISD") and states as follows:

**I.   INTRODUCTION.**

1.0 S.R. is a now eleventh-grade female student who resides in Defendant CISD. S.R. is a life-long resident of Defendant CISD and has attended its schools from kindergarten until late September, 2018, the fall of her tenth-grade year. Defendant CISD found S.R. eligible for special education and related services in 4th grade (2013) on the basis of having Attention Deficit Hyperactivity Disorder ("ADHD"). Sadly, from 2013 forward, Defendant CISD failed to provide S.R. a free appropriate public education, repeatedly ignoring her needs as a student with a bipolar disorder, a specific learning disability, language impairment and other difficulties. As a result, S.R. received insufficient special education and related services. Last year, in 10th grade, S.R. was sexually assaulted at Defendant CISD's high school. Defendant CISD failed to properly respond

1

to this, causing Plaintiff Andrea R. to privately educate her. S.R. is currently attending Gateway Academy, a private school that meets her needs and she also receives related services of intensive counseling through other private programs. This case is brought pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§1400, et seq., and related federal regulations and Texas law. On November 14, 2018, Plaintiffs timely requested a special education hearing known as *Sara R. b/n/f Andrea R. v. Conroe* 144-SE-0119. On June 21, 2019, a Texas Education Agency hearing officer issued a decision referenced herein as SEHO decision. Ex. 1. Despite the extensive administrative record establishing that Defendant CISD denied S.R. a free appropriate public education, the SEHO's decision found mostly for Defendant CISD. Plaintiffs now timely appeal this factually erroneous, legally incorrect and arbitrary and capricious decision.

**2.    JURISDICTION AND VENUE.**

2.0    This case is a claim under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§1400 et seq. (2004), 34 C.F.R. Chapter 300 and Texas special education law at 19 Tex. Admin. Code Chapter 89. This Court has jurisdiction because Plaintiffs exhausted any administrative remedies through the SEHO decision.

2.1    Plaintiffs are aggrieved by the decision and this Court has subject-matter jurisdiction over the federal law claims pursuant to 28 U.S.C. §1331 and 20 U.S.C. §§1400 et seq.

2.2    Venue in this Court is proper under 28 U.S.C. §1391(b).

**3.    THE PARTIES.**

3.0    At all times material to this action[1], Plaintiffs legal residence was within the Defendant Conroe Independent School District. Andrea R. is the legal guardian. The student's initials, S.R.

---

[1] Sara R. attended Youth Care, a residential treatment center in Draper, Utah from October 5, 2018 through November 18, 2018.

2

are used to protect the minor's privacy consistent with Fed. R. Civ. Proc. 5. The full identify of the Plaintiffs is known to Defendant CISD but can be fully revealed to the Court at a later date, if necessary.

3.1   Defendant CISD is a public-school district in the State of Texas and is a local educational agency under the IDEA. Defendant CISD receives IDEA federal funding from the State of Texas. Defendant CISD is obligated to fully comply with the IDEA, all of its related federal regulations, Texas Education Code Chapter 29 and the commissioner's rules. Defendant CISD has a duty to ensure plaintiff S.R., a child with a disability, is safe at school.

4.   **S.R.'s EDUCATIONAL EXPERIENCE: KINDER THROUGH 8TH GRADE.**

4.0   S.R. was adopted as a toddler from Russia, and attended Defendant CISD schools continuously until September 24, 2018 in the fall of her tenth-grade year, officially withdrawing on October 4, 2018.

4.1   During her fourth-grade year, 2012-2013, Plaintiffs had S.R. evaluated by the Texas Children's Hospital. TCH concluded S.R. suffered from ADHD and a mathematics learning disability/disorder. This information was conveyed to Defendant CISD which conducted its own evaluation and denied S.R. eligibility for special education services.

4.2   In the spring of her fourth-grade year, S.R. was evaluated by two additional independent evaluators, both of whom found that she had disabilities which could allow her to be deemed eligible for special education. Dr. Peter Simione evaluated and concluded that she had ADHD and academic difficulties. He recommended S.R. be identified as eligible for special education under the categories of Other Health Impairment (OHI) and Specific Learning Disability (SLD). A second evaluator, Sharon Duval concluded that S.R. had a mixed receptive-expressive language

disorder. A child can be deemed eligible for special education and related services if they have a language disorder.

4.3     On May 7, 2013, the very end of her fourth-grade year, despite having not reevaluated her, Defendant CISD finally agreed that S.R. was eligible for special education as related services under the OHI category based on ADHD. Defendant CISD denied S.R. eligibility as a result of a Specific Learning Disability or a Language Disorder.

4.4     From 5th grade through 8th grade, (2013-2014, 2014-2015, 2016-2017, 2017-2018), Defendant CISD only recognized only OHI eligibility for ADHD.

4.5     S.R. should have received a full re-evaluation in 2015. However, Defendant S.R. did not conduct a full re-evaluation. Instead it completed a re-evaluation on March 2, 2015. The team did not include the required members, such as a Licensed Specialist in School Psychology (LSSP) or a clinical psychologist. Plaintiff parent went along with this because staff told her that if a full evaluation was completed, S.R. might lose her special education eligibility.

4.6     S.R. should have received a full re-evaluation in 2017. Instead, again, Defendant S.R. did not conduct a full re-evaluation, only completing a re-evaluation on December 7, 2017. Once again, the team did not include the required members, such as a Licensed Specialist in School Psychology (LSSP) or a clinical psychologist. Plaintiff parent again went along with this because of the threat that a full individual evaluation would result in loss of special education eligibility.

**5.     S.R.'s NINTH GRADE YEAR (2017-2018)**

5.0     During the 2017-2018 school year, her ninth-grade year, S.R. was exhibiting serious behaviors at home and school. She accessed porn online at home and school, made disrespectful and bizarre comments to peers and teachers, cried and shut down at school and refused to do homework. Teachers confirmed that S.R. had maladaptive behaviors such as failing to follow

directions, disturbing the class, inappropriate behaviors and even falsely reporting she had been beaten up to avoid taking a math test.

5.1     On November 28, 2017, Plaintiff parent asked for an ARD that included S.R.'s private therapist, but this did not occur. When the ARD occurred on December 7, 2017, an annual ARD, the Defendant CISD documented that "historically, S.R. has had issues with talking in class and engaging in behaviors that impede the learning process for herself and peers.

5.2     By spring 2018, S.R.'s behaviors were continuing. Teachers were reporting mood problems, strange behaviors, outbursts and deteriorating relationships with friends and peers.

5.3     S.R. was bullied throughout 2017-2018, her ninth-grade year, particularly by other participants in the school's color guard. Part of the reason for S.R.'s difficulties were her unaddressed communication deficits. S.R. would not communicate well; her responses were strange and came across to other children as "bizarre." This led to more bullying.

5.4     Throughout her ninth-grade year, S.R. was verbally bullied, including being called a "whore." Other children called her a "THOT" ("That Whore Over There").

5.5     Throughout her ninth-grade year, S.R. was bullied online, including detailing how she would be killed and with what type of guns. The student involved in this was removed from the school but the bullying increased as S.R. was blamed by peers for his removal.

5.6     Defendant CISD never held an ARD/IEP meeting to discuss how to help S.R. in light of the bullying.

5.7     Plaintiff parent tried to help S.R. She used a mood tracker with her in May of 2018 which documented that S.R. was cycling 10 times a day between being giddy and depressed. Plaintiff parent arranged for and took S.R. to individual therapy once a week and group therapy twice a week. Plaintiff informed school staff about outside therapists, psychologist and psychiatrists that

S.R. was seeing and provided copies of outside evaluations. Defendant CISD withheld counseling, therapeutic counseling and cognitive behavior therapy and never told the Plaintiff parent that it could provide S.R. counseling services.

5.8     At the end of her ninth-grade year, May 2018, S.R. failed to meet the requirements of the STAAR End of Course examinations for Algebra I, Biology, and English 1.

**6.     S.R.'s TENTH GRADE YEAR (2018-2019): FALL IN CISD's HIGH SCHOOL.**

6.0     During the summer of 2018, S.R. began experiencing anxiety attacks. These continued into the school year. Another parent called Plaintiff parent to report that S.R. was lying in the hallway at school and hyperventilating. S.R. had so many panic attacks that she was not able to learn the color guard dance routines and was cut from performances.

6.1     In September 2018, S.R. was exhibiting suicidal ideation, that is thoughts of suicide and killing herself.

6.2     In the fall of 2018, S.R. exhibited inappropriate behavior that was extremely disruptive and disrespectful during class, and repeatedly crying in class. She frequently visited the nurse. Plaintiff parent told Defendant CISD that S.R. was having problems with depression and seeing a psychiatrist. School staff testified that S.R. was crying and having emotional difficulties at least once per class period and in one of her special education classes it was sometimes the entire class period.

6.3     On September 9, 2018, Plaintiff parent emailed staff that S.R. was "struggling with some challenging mental health issues."

6.4     S.R. was giving her parent a variety of excuses to not attend school in the fall of 2018; her pediatrician completed an exam and determined that S.R. was "distressed from being at school."

S.R. repeatedly called her mother and requesting to come home early. In addition, if she stayed at school, S.R. was visiting the nurse so frequently that she was a "known repeat visitor."

6.5     Plaintiff parent specifically told the nurse of mental health issues that S.R. was having, including a diagnosis of bipolar disorder. Plaintiff parent told the nurse about S.R.'s medications and the possibility of inpatient hospitalization. At no time did the nurse ask for releases to speak with the child's treating physicians.

6.6     Bipolar disorder is a serious condition that can lead to suicide and self-harm if left untreated. It is a really serious condition with a 15% fatality rate.

6.7     S.R. also suffered from test anxiety. This was well-documented in school records. And by September 7, 2018, S.R.'s grades were dropping; she failed her Algebra midterm, was failing chemistry, did not pass her biology STAAR.

6.8     S.R. reported that she was assaulted by a male student in the fall of 2018. A student who is sexually assaulted can suffer from Post-Traumatic Stress Disorder (PTSD). In S.R.'s case, even if she was not actually assaulted, reporting she was would be evidence of a serious emotional disturbance. The impact of the prior bullying, and the assault and PTSD can be impaired academic performance, social withdrawal, isolation, depression, anxiety, impaired social functioning, low self-confidence and low-self-esteem. PTSD is a potential predictor for not only further victimization but also suicide and self-harm.

6.9     In response to the special education due process hearing request, Defendant CISD confirmed that it knew S.R. was experiencing a "mental health crisis" in the fall of 2018. But at the time, in the fall of 2018, school staff including the general education counselor, diagnostician, special education teacher, and nurse, did not take any steps to obtain a release from Plaintiff parent to obtain records or initiate contact or in any other way attempt to work with the family to contact

7

S.R.'s private counselors or psychiatrist or psychologists. Defendant CISD did not propose any assistance, including a full individual evaluation or psychological evaluation or counseling services or even convene an IEP/ARD meeting to discuss solutions.

6.10   Defendant CISD's own handbook states that when a child's behavior impedes their learning or the learning of others, the ARDC should meet and discuss whether to conduct a functional behavioral analysis and a behavioral intervention plan. Defendant CISD had **never** conducted a full individual evaluation of S.R. that included a behavioral/psychological evaluation.

**7.      TENTH GRADE (2018-2019)- YOUTH CARE - PRIVATE PLACEMENT.**

7.0   In mid-September, 2018, Michelle Garcia, recommended a residential placement for S.R. She identified S.R. with bipolar disorder with recently developed symptoms of tardive dyskinesia and large mood fluctuations.

7.1   On September 24, 2018, S.R. reported an alleged sexual assault occurring on September 21, 2018.

7.1   Accordingly, Plaintiff parent placed S.R. at Youth Care as of October 4, 2018.  Youth Care was a hospitalization designed to address S.R.'s disability of bipolar disorder and suicidal ideation and also provided educational services.

7.2   On October 26, 2018, Plaintiff parent emailed Defendant CISD requesting the school district to hold an ARD to transition S.R. from Youth Care back to the Defendant CISD. Defendant refused, with CISD staff telling the parent that they could not convene an ARD because S.R. was not enrolled in the district but was still at Youth Care.

7.3   Defendant CISD failed to provide the parent with Prior Written Notice that it was refusing to hold an ARD/IEP to plan to transition S.R. back.

7.4     Youth Care discharged S.R. on November 18, 2018. As she had no transition plan for school because the Defendant CISD refused to hold an ARD/IEP, Plaintiff parent arranged for S.R. to enroll in a partial hospitalization program (PHP) known as Insight Behavioral Health Center of the Woodlands (Insight). S.R. attended Insight from November 19, 2018, through January 31, 2019 where she received services from 9 a.m. - 4 p.m. Monday through Friday and from 9 a.m. to 2 p.m. on Saturday.

**8.     THE HEARING REQUESTS.**

8.0     On November 14, 2018, four days before she was released from Youth Care, Plaintiff filed for a special education due process hearing, *Student v. Conroe ISD*, Doc. No. 144-SE-0119.

8.1     After the parent already had an Independent Educational Evaluation (IEE) request on file with CISD, on January 22, 2019, Defendant CISD filed its own hearing request to get permission to override lack of parental consent for evaluation which was sought only after the parent's hearing request was filed. That case was known as *Conroe ISD v. Student,* Docket No. 150-SE-0119. The case was consolidated with the parents' request for hearing, Docket No. 144-SE-0119.

**9.     TENTH GRADE (2019 SPRING AND FORWARD)– PRIVATE PLACEMENT – GATEWAY AND INSIGHT.**

9.0     Defendant CISD wholly refused to convene a meeting to discuss S.R.'s needs as she returned so that an IEP could be revised and modified accordingly. Consequently, S.R. did not return to Defendant CISD.

9.1     In early January, 2019, S.R. began attending Gateway Academy. Gateway Academy is a private school located within the Houston Independent School District boundaries.

9.2     Plaintiffs are bearing the costs of the private school and gave proper notice of their intent to have S.R. attend there.

9.3     Gateway Academy serves 6th-12th graders, and focuses on students with learning differences, neurodevelopmental disorders and problems with emotional functioning. Gateway has small classes, including a specific social communications class of 6-8 students taught by a speech and language therapist three times each week. Gateway Academy is meeting S.R.'s educational needs, including some of her emotional needs. S.R. has a scheduled counseling session with a Licensed Professional Counsel three times a week for 30 minutes a session. She also has instruction from a Board Certified Behavior Analyst (BCBA) and Speech Language therapist.  In addition, the Plaintiff parent is paying for private counseling from Insight and other sources.

9.4     The cost of Gateway Academy for the spring and summer 2019 sessions was $15,870. The Plaintiff paid these amounts and provided transportation.

9.5     The cost of Gateway Academy for the 2019-2020 school year is $28,300 plus mileage.

9.6     At the time of the filing of this lawsuit, S.R. remains at Gateway Academy where she has just started her 11th grade (junior) year.

**10.    THE IHO'S OMISSIONS AND ERRORS.**

10.0    The IHO made serious and significant errors of fact and omissions of critical facts.

10.1    The IHO made serious and significant errors of law and omissions of considerations of significant legal requirements.

10.2    The IHO erred in failing to appreciate that the IDEA requires a school district to comply with all of the procedures of the IDEA and only then consider whether the IEP was reasonably calculated to result in meaningful educational progress. Cf. IHO at 17-19. *Board of Education v. Rowley*, 458 U.S. 176 (1982); *Endrew F. v. Douglas County School District RE-1*, 1137 S. Ct. 988 (2017). The IHO's analysis was backwards. *Caldwell v. Joe P.*, 993 F. Supp. 2d 811 (W.D. 2012),

affirmed, 551 fed. Appx. 140 (5th Cir. 2014) (first addressing procedural sufficiency and then substantive compliance).

10.3    The IHO incorrectly analyzed Prior Written Notice. The IDEA statutorily requires Prior Written Notice. 20 U.S.C. §§1415(b)(3) and 1415(c)(1). First, the IHO factually found that the Defendant CISD did not issue a Prior Written Notice to explain why it was refusing to hold an ARD as Plaintiff parent requested as S.R. was leaving Youth Care to transition her back to the district. IHO at 10, at ¶50. Further, the IHO found that the Defendant CISD failed to issue a Prior Written Notice when it refused to provide S.R. an Independent Educational Evaluation (IEE). IHO at 10, ¶52. Despite these factual findings, the IHO summarily excused the violations. IHO at 20-21, and 17-20. Within her discussions, the IHO also incorrectly uses "parent blame" suggesting the parent had some duty to provide information to the district and that S.R. had to be enrolled in the Plaintiff parent's resident district. IHO at 17-19. The IHO is legally wrong on both counts. The procedural violations are important for remedies that should have issued as well as Plaintiff parent's right to attorneys' fees. 20 U.S.C. §1415(k)(3)(G).

10.4    The IHO erred in concluding that the Texas one-year statute of limitations to file for a due process hearing precludes remedies for S.R. beyond one year. IHO at 1, and 13. Moreover, factual information that precedes a statute of limitations can be considered in a situation of Child Find. *Spring Branch Indep. Sch. Dist. v. O.W.*, 2019 U.S. App. LEXIS 27845 (5th Cir. 2019) (considering the time-frame from the relevant trigger date even though it preceded the limitations period).

10.5    The IHO erred in concluding that this matter was not a "Child Find" case despite the failure of the Defendant District to correctly and comprehensively determine all of S.R.'s suspected disabilities, including emotional disturbance, a specific learning disability and a language disorder.

11

IHO at 13. The IHO erred by condoning the District CISD's blatant refusal to timely, correctly and comprehensively conduct full individual evaluations and instead use deficient re-evaluations of S.R. IHO 17-18. Notably, the IHO addresses the evaluation issue at the end of her discussion, rather than realizing it is the start of any IEP. The IDEA requires a Full Individual Evaluation ("FIE") and completion of same is critical not only to determination of IDEA eligibility but services for the child. *Lisa M. v. Leander Indep. Sch. Dist.*, 924 F. 3d 205, 208 (5th Cir. 2019) (explaining that the initial FIE process must determine if the child has a disability and the educational needs of the child and referring to same as "crucial.")

10.6   The IHO erred by finding that S.R.'s December 7, 2017 IEP was appropriate. IHO at 16.

10.7   The IHO erred by finding that the December 7, 2017 IEP was provided in a coordinated and collaborative manner by key stakeholders. IHO at 16. The IHO ignored factual evidence that some of the teachers did not even know that S.R. had an IEP.

10.8   The IHO erred by failing to address in any detail the Defendant CISD's failure to offer and to fully implement appropriate IEPs at all times. The failure to implement an IEP may result in a violation of the IDEA. *Hous. Indep. Sch. Dist. v. Bobby R.*, 200 F.3d 341, 349 (5th Cir. 2000); *Spring Branch Indep. Sch. Dist.*, 2019 U.S. App. LEXIS 27845 (5th Cir. 2019) (a substantial or significant failure to implement and IEP and lack of benefit denies a child a free appropriate public education).

10.7   The IHO erred by finding that S.R.'s services were provided in the least restrictive environment. The services were provided in special education resource rooms whose other students had intellectual disabilities and other disabilities; these students were not appropriate peers for S.R. The IHO further egregiously erred in finding that Plaintiff had to prove that Gateway Academy, a private school was providing services in the least restrictive environment. IHO at 17.

When a parent must rely on available private services, the usual IDEA requirements, including the LRE requirement does not apply. *Alamo Heights Indep. Sch. Dist. v. State Bd. of Education,* 790 F.2d 1153, 1161 (1986) (parental right to unilateral private placement reimbursement is not so narrow as to require a parent to find a program that is the exact proper placement under the IDEA).

10.8   The IHO erred by finding that S.R. received positive academic and non-academic benefits. IHO at 17.

10.9   The IHO erred in concluding that severe bullying did not deprive S.R. of a free appropriate public education. IHO at 19. Specifically, S.R. was severely impacted by bullying, including on-line threats that were substantiated resulting in the aggressor being removed from the school and subjecting the student to more bullying including being called a "THOT." The IHO applied an incorrect legal standard to determine if bullying deprived S.R. of a FAPE. The IHO ignored proven bullying including online bullying, verbal bullying at school, and the reported sexual assault. Bullying can be a deprivation of a free appropriate public education and the failure to use the ADR/IEP process to discuss solutions to bullying can be a denial of a free appropriate public education. *Dear Colleague Letter,* 61 IDELR 263 (OSERS/OSEP 2013); *Dear Colleague Letter: Responding to Bullying of Students with Disabilities*, 64 IDELR 115 (OCR 2014); *Shore Regional High School Board of Education v. P.S.*, 381 F.3d 194 (3rd Cir. 2004); *M.L. v. Federal Way School District*, 394 F.3d 634 (9th Cir. 2005); *T.K. and S.K. v. New York City Department of Education*, 810 F. 3d 869 (2nd Cir. 2016). The IHO's factual determinations are devoid of the facts Plaintiffs proved about bullying. See, IHO at 7-9, ¶¶27-45. HO's 10-line sentence conclusion does not fairly, factually or legally address the bullying claim. IHO at 19.

10.10   The IHO erred in finding that S.R. was not entitled to reimbursement for Youth Care RTF and Insight Behavioral Health Center. IHO at 20. The IHO applied an incorrect standard.

10.11 The IHO erred in finding that Plaintiff was not entitled to reimbursement for Gateway Academy. IHO at 20.

10.12 The IHO erred in finding that Plaintiff was not entitled to reimbursement for the Independent Educational Evaluation (IEE) paid for by the parent (Dr. Simione second evaluation). IHO at 20.

10.13 The IHO ignored and failed to address whether Defendant CISD failed to evaluate S.R. for transition needs and provide her a meaningful transition program.

10.14 The IHO ignored and failed to consider the Defendant CISD's failure to provide IEPs that were legally consistent with 20 U.S.C. §1414(d), including present levels of performance, goals and objectives with trackable progress reporting, review of progress reporting and the complete failure to provide **any** IEP from September 2018. The IDEA requires an IEP. It is the "cornerstone" of the special education delivery system. 20 U.S.C. §1401(9)(D) and 20 U.S.C. §1414(d) require an IEP. For the IHO to hold that the child was provided a FAPE in the absence of an IEP is clear error.

10.15 Throughout the IHO's decision, the IHO repeatedly omits facts that support Plaintiffs' legal allegations.

10.16 The IHO failed to give due weight to experts who had evaluated and worked with S.R., and instead unduly deferred to school district staff, several of whom were not even aware she had an IEP and who had not evaluated her before opining on her needs.

10.17 The IHO made erroneous legal findings, including failing to apply the correct statutory and regulatory standards to the requirements of a free appropriate public education and deciding that S.R. was afforded a free appropriate public education in the least restrictive environment and that her parent had been provided all legal information required.

**11.    PLAINTIFFS WERE DENIED A FAIR HEARING.**

11.0    The IHO's conducting of the hearing and the resulting decision does not meet the statutory standards set forth in 20 U.S.C. §1415(f)(3)(A).

11.1    The IHO contained many errors of fact but even more omissions of fact and erroneous interpretations of law.

11.2    The IHO erred in overly relying on the Defendant CISD's own staff as "experts" as staff were not always identified or proved up as experts.

11.3    Because the IHO's decision was so faulty, the Court should not defer to it. Plaintiffs were denied their right to the special education hearing process with a hearing officer whose conducting of the hearing and issuance of the decision met the statutory requirements.

**12.    FIRST CAUSE OF ACTION – IDEA AND TEXAS LAW.**

12.0    Plaintiffs re-allege paragraphs 1.0 – 11.3 above and incorporate them by reference in support of their claims pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§1400 et seq, and its related regulations at 34 C.F.R. Chapter 300. Plaintiffs also allege violations of the Texas Educ. Code Chapter 29 and 19 Tex. Admin. Code Chapter 89 both of which are to ensure that the IDEA is fully implemented in Texas.

12.1    Plaintiffs seek reversal of the IHO"s Decision in all respects where it is contrary to fact and law.

12.2    Plaintiffs request this Court find that Defendant CISD denied or impeded Plaintiff Andrea R and Plaintiff S.R.'s right to a free appropriate public education designed to meet her unique needs and resulting in meaningful benefit, significantly infringed on Plaintiff Parent's involvement, and denied or impeded her right to a fair hearing. They request that the Court provide S.R. and Plaintiff parent all appropriate relief, including the relief that the IHO denied.

12.3     Plaintiffs specifically demand that this Court hold Defendant CISD accountable for its egregious failure to timely and correctly identify all of S.R.'s disabilities, including her serious emotional disturbance (Bipolar Disorder, PTSD, test anxiety), expressive-receptive language disorder and Specific Learning Disability (listening comprehension, written expression and math calculation).

12.4     When the Court reverses the IHO's Decision, Plaintiffs will be a prevailing party and as such seek their attorneys' fees and recoverable costs for representation before the IHO and before this Court. If Plaintiffs prevail, they seek both pre-judgment and post-judgment interest on attorneys' fees and recoverable costs.

**13.     PRAYER FOR RELIEF**

13.     Plaintiffs respectfully request that this Court enter judgment against Defendant CISD and grant the following relief:

    a.     Reverse those parts of IHO's decision that are contrary to fact, that intentionally omit facts, that are contrary to law or incorrectly left undecided and where the IHO applied the wrong standard, and incorrectly relied upon fact witnesses for opinions contrary to the rules of evidence.

    b.     Find that the IHO applied a standard other than a preponderance of the evidence.

    c.     Find that the IHO misinterpreted the statute of limitations, Child Find, prior written notice, necessity of an IEP to ensure compliance with the IDEA, the impact of bullying, and numerous other provisions of the IDEA.

    d.     Order that S.R. has been and is continuing to be deprived of a free appropriate public education (including failure to fully identify all needs, create and implement an IEP addressing all needs that includes measurable goals, objectives, and progress reporting, and failed

to establish progress) as her parent is having to pay for private services at Gateway Academy with supplemental programming from Insight.

  e. Order that Plaintiff Andrea R.'s separate independent parent rights were grossly violated as a matter of law, including the right to an IEP even though her child was not attending school because she was psychiatrically hospitalized. Further that the Defendant CISD denied her meaningful participation in the IEP progress and her rights were significantly infringed as a matter of law and that such infringement impeded, delayed or denied her rights,

  f. Order that Defendant CISD pay for Gateway Academy and Insight forward for an appropriate period of time and/or provide compensatory education for S.R.

  g. Order that IHO Lowe be prohibited from assignment to any future cases concerning S.R. until she receives extensive training as a hearing officer.

  h. After reversal of the hearing decision, declare Plaintiffs prevailing party in the litigation and allow submission of Plaintiffs' reasonable attorneys' fees and related costs as permitted by law and incurred in the administrative proceedings, award additional fees and costs incurred in pursuing the current action and award Plaintiffs' pre-judgment and post-judgment interest on any and all awards of fees and costs; and

  i. Such other and further relief to which Plaintiff Andrea R. and Plaintiff S.R. are entitled.

Respectfully submitted this 18th day of September 2019,

> *s/Sonja D. Kerr*
> Sonja D. Kerr
> Lead Counsel, Counsel-In-Charge
> State Bar #24095771
> Southern Dist. Bar #2952271
> Connell Michael Kerr, LLP
> 9600 Great Hills Trail, Suite 150
> Austin, Texas 78759

Telephone: (512)-637-1083
Facsimile: (512)-717-5204
Email: Sonja@cmklawfirm.com

Dorene Philpot
State Bar # 24055011
Philpot Law Office
7314 Offats Pointe
Galveston, TX 77551
Ph: (281)-989-2010
Facsimile: (866)-324-4995
Email: fape4kids@gmail.com

Counsel for Plaintiffs